■ EDWARD M. NORMILE, on Behalf of Himself and All Others Similarly Situated, Appellant, v ALLSTATE INSURANCE COMPANY, Respondent. — Appeal from an order of the Supreme Court at Special Term (Lee, Jr., J.), entered December 17, 1980 in Broome County, which, *inter alia,* granted in part defendant's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) by dismissing so much thereof as seeks class action relief and punitive damages, and denied the motion in all other respects. This controversy involves the interpretation of two key provisions of New York's Comprehensive Automobile Insurance Reparations Act (Insurance Law, §§ 670-678). Plaintiff was injured in September, 1977 in an accident between his motorcycle and an automobile. He had covered medical expenses totaling $34,391 and a total loss of earnings of $16,992. Defendant paid plaintiff's medical expenses and also paid him for his loss of earnings after deducting 20% of the lost earnings and after deducting an amount which plaintiff had received in Social Security disability benefits. When plaintiff sought acknowledgment by defendant that he was entitled to further first-party benefits for additional medical care, his claim was denied on the ground that his maximum basic economic loss of $50,000 had been exhausted and he was no longer entitled to first-party benefits. Plaintiff commenced the present action as a class action seeking a declaration that defendant illegally reduced covered persons' outer limit of $50,000 basic economic loss coverage by taking therefrom the deductions set forth in subdivision 2 of section 671 of the Insurance Law. Plaintiff also sought punitive damages. Special Term, on defendant's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7), concluded that the reduction of the $50,000 outer limit of basic economic loss by the 20% deduction of lost wages and Social Security disability payments was proper. The class action aspect of the complaint was dismissed as well as plaintiff's claim for punitive damages. Due to a discrepancy in the amount of payments actually made to plaintiff by defendant, plaintiff's individual complaint was not dismissed. This appeal ensued. The basic question presented is whether the statutory setoffs enumerated in subdivision 2 of section 671 are to be deducted from basic economic loss up to $50,000, as was done by defendant, or whether the setoffs are to be deducted from actual economic loss so that the insurer is liable for a maximum payment of $50,000. Subdivision 1 of section 671 provides that " 'Basic economic loss' means, up to fifty thousand dollars per person" for certain expenses incurred and loss of earnings. First-party benefits are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less * * * [certain deductions]" (Insurance Law, § 671, subd 2). In order to resolve the present controversy, we must ascertain the legislative intent from the wording of the statute. The statute states that " 'Basic economic loss' " includes certain expenses and lost earnings up to $50,000 (Insurance Law, § 671, subd

1). " 'First party benefits' " are defined as payments for basic economic loss *less certain setoffs* (Insurance Law, § 671, subd 2). A fair reading of the language, in our view, imports a statutory scheme whereby an injured person is entitled to receive first-party benefits equal to his basic economic loss up to $50,000 less the statutory deductions set forth in subdivision 2 of section 671 of the Insurance Law. The statutory language is clear and unambiguous in its limitation of basic economic loss to $50,000. Since a covered person cannot recover for basic economic loss in an action for personal injuries arising out of negligence in the use and operation of a motor vehicle (Insurance Law, § 673, subd 1), the deletion of the $50,000 limitation from the definition of basic economic loss would eliminate the threshold amount indicating at which point the injured party may bring a tort action (see *Montgomery v Daniels*, 38 NY2d 41). One of the purposes of this insurance legislation is to reduce the cost of automobile insurance and we are of the opinion that our interpretation of the statutory language is consistent with such objective. In addition, an injured party, under certain circumstances, may bring a personal injury action against a third party once his basic economic loss has reached the maximum of $50,000 and, therefore, a reduction in the cost of automobile insurance could result by placing some of the burden elsewhere. Plaintiff seeks to hold the insurance carrier liable for up to $50,000 in coverage without any deductions. In other words, the $50,000 limitation would apply to first-party benefits rather than basic economic loss. If the Legislature had so intended, they could have easily provided that first-party benefits mean payments for basic economic loss, less the deductions, with the benefits payable up to $50,000. We conclude that by placing the limitation in the definition of basic economic loss, the Legislature clearly intended that the limitation apply to basic economic loss. This court's interpretation is bolstered by the fact that it is consistent with the established practice and regulations of the Superintendent of Insurance (see 11 NYCRR 65.2). The Legislature did not attempt to clarify the provision in 1977 (L 1977, ch 892) and we must assume that they were aware of such practice and regulations. In support of his interpretation of the provisions in question, plaintiff relies on *Kurcsics v Merchants Mut. Ins. Co.* (49 NY2d 451). *Kurcsics,* however, dealt with a different provision of section 671 of the Insurance Law. It was concluded in *Kurcsics* that the $1,000 limitation contained in section 671 (subd 1, par [b]) of the Insurance Law was not part and parcel of the definition of lost earnings (*Kurcsics v Merchants Mut. Ins. Co., supra,* p 458). We are of the opinion that the $50,000 limitation embodied in section 671 of the Insurance Law is clearly an integral part of the definition of basic economic loss. A contrary conclusion, in our view, is illogical and inconsistent with the purpose and intent of the legislation in question. We reject plaintiff's arguments that section 671 of the Insurance Law violates his right to equal protection. In view of our conclusion in this case and considering the present record in its entirety, we also conclude that Special Term properly dismissed the class action aspect of plaintiff's complaint and plaintiff's claim for punitive damages. The order, therefore, should be affirmed. Order affirmed, without costs. Sweeney, J. P., Kane, Casey and Yesawich, Jr., JJ., concur.

Weiss, J., dissents and votes to modify in the following memorandum. Weiss, J. (dissenting). I respectfully dissent. The facts in this case are undisputed. As the result of an accident, plaintiff sustained extensive personal injuries and made a claim for payments under the no-fault provisions in defendant's liability insurance policy covering the involved automobile. The controversy arose when defendant determined that it had attained the outer limit of liability of $50,000 under its policy. Defendant contends that by payment of $34,391 in medical expenses, together with $16,992 gross wage loss *claimed,*

the total is $51,383. In its computation of the gross wage loss claim, defendant deducted the 20% income tax deduction (Insurance Law, § 671, subd 2, par [a]) and Social Security disability benefits (Insurance Law, § 671, subd 2, par [b]). Although defendant's actual payment totaled $41,047, it took credit for these statutory deductions in the amount of $10,336. Defendant rejected plaintiff's claim for further required medical care on the ground that its outer limit of liability of $50,000 had been attained. Plaintiff then commenced an action for declaratory judgment on behalf of a class comprised of all similarly situated persons, and also sought punitive and exemplary damages. Defendant moved to dismiss the complaint pursuant to CPLR 3211 on the ground it failed to state a cause of action. Special Term, finding that the case centered upon an ambiguity perceived to exist in section 671 of the Insurance Law between the terms " 'Basic economic loss' " (subd 1) and " 'First party benefits' " (subd 2), upheld defendant's interpretation of the law and granted an order dismissing the class action portion of the complaint and all portions seeking punitive damages. This appeal ensued. In its decision, Special Term found that only a question of law was presented and it interpreted section 671 of Insurance Law by resolving the ambiguity in favor of defendant, holding that the complaint failed to state a cause of action to the extent aforesaid. If indeed the sole issue is the interpretation of section 671, I disagree with both Special Term and the majority in this court. This court's interpretation places its imprimatur upon the practice of automobile insurance carriers of reducing insurance policy limits below the stated face amount of $50,000.[*] In so doing, carriers are permitted to appropriate unto themselves the section 671 (subd 2, pars [a], [b]) deductions from first-party benefits as though they had paid out such deducted sums to a claimant, thereby reducing the outer limit of their risk below $50,000. The statute mandates payment of " 'First party benefits' " to injured victims of automobile accidents (Insurance law, § 672 — "Entitlement to first party benefits"). Subdivision 2 of section 671 states that first-party benefits "means payments to reimburse a person for basic economic loss on account of personal injury". " 'Basic economic loss' means, up to fifty thousand dollars per person" (a) all medical expenses, and (b) loss of earnings from work up to $1,000 per month for not more than three years. Therefore, until a carrier has *paid out* a total of $50,000 of basic economic loss, comprised of any combination of medical expenses and loss of earnings it has not attained the outer limit of liability which it has assumed in return for a premium. Subdivision 2 of section 671 defines first-party benefits to be paid, and the deductions to be taken in reduction of those first-party benefits are set forth in paragraphs (a) and (b) thereof. The statute does not specify that deductions are to be taken from basic economic loss. Nowhere does the Insurance Law provide or permit reductions of the $50,000 liability limit by these deductions. This is readily apparent from provisions in the regulations such as, "[B]asic economic loss of each eligible injured person on account of any single accident shall not exceed $50,000" (11 NYCRR 65.1 [c], 65.2, 65.11 [c], 65.12 [a]), "[W]hen claims aggregate to more than $50,000 * * * prior to the exhaustion of the $50,000. If the insurer pays the $50,000" (11 NYCRR 65.6 [m]). In 11 NYCRR 65.15 (m), under computation of basic economic loss, these words appear: "[I]f the insurer pays the $50,000 * * * the insurer will not be liable to pay such late claims". It is now beyond cavil that the 20% deduction imposed by section 671 (subd 2, par [a]) was included in the statute to prevent a windfall recovery to injured persons and financial hardship to insurance carriers. By limiting first-party benefits to 80% of lost earnings, the Legislature took into account the facts that the lost earnings compensated under the law are not includable in income

---

[*] We are not here concerned with the medical expense portion of basic economic loss.

for the purposes of Federal income taxation and that claimants, therefore, derive a benefit in that respect. Accordingly, it was intended that insurance carriers should share in this benefit in the hope premiums might be lower (see *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 457). Defendant, and the majority herein, have transmogrified the statute in a conceptualization which bestows the promulgated benefit not upon accident victims, but upon insurance carriers. The legislative intent was to provide for payment of first-party benefits to accident victims by insurance carriers, which, for a paid premium, assume risk up to an outer limit of $50,000. The Court of Appeals in *Kurcsics* delineated the rule: "Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight" (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). As stated in *State Farm Mut. Auto Ins. Cos. v Brooks* (78 AD2d 456, 458-459, app dsmd 54 NY2d 753): "The No-Fault Law was enacted primarily to assure 'that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault' [citations omitted]. According to the legislative scheme an injured individual 'is entitled to actual lost earnings claimed less 20%, unless such reduced figure exceeds $1,000 per month' (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 456-457). As the Court of Appeals noted, it is not the purpose of this legislation to provide a windfall for either the injured person or the insurance carrier. Instead, the intention is 'to compensate the accident victim for the earnings he or she would have, *in fact,* realized, while, at the same time, ensuring that an unjustified financial burden is not thrust upon the insurance companies which would eventually be reflected in higher insurance premiums' (*Kurcsics v Merchants Mut. Ins. Co., supra,* p 457; emphasis added)." I would, for these reasons, reverse the order insofar as it dismissed portions of the complaint.